Lillian KERR, Plaintiff–Appellant,

v.

MAGIC CHEF, INC.,
Defendant–Appellee.

Supreme Court of Tennessee,
at Knoxville.

July 23, 1990.

James F. Logan, Jr., Cleveland, for plaintiff-appellant.

Denny E. Mobbs, Cleveland, for defendant-appellee.

## OPINION

FONES, Justice.

This workers' compensation case involves an employee who sustained an injury to a scheduled member, which in turn caused psychological problems. The trial court held that the employee was restricted in her recovery to the scheduled member and could not recover for an injury to the body as a whole. We reverse and remand for a determination of the permanent disability to the body as a whole.

Plaintiff, Lillian Kerr, worked for Defendant, Magic Chef, when her hand was severely injured in a mechanical press on 16 January 1987. Three of her fingers were partially amputated. Plaintiff's orthopedic surgeon referred her to Dr. Randall Brewer, a psychiatrist, in May of 1987. Dr. Brewer testified by deposition that Plaintiff was having psychological problems as a result of this injury; "[s]he reported at that time having feelings of being alone, she reported recurrent and intrusive memories of the trauma ... She reported some panic in grocery stores...." Dr. Brewer diagnosed her as suffering from post-traumatic stress disorder. Besides the psychotherapy, Plaintiff was taking Sinequan, an antidepressant. After some progression, she returned to work, but she had to quit because she became too upset. Plaintiff also developed a speech impairment which became more severe over time. Dr. Brewer could not determine the cause of this speech problem.

After a trial, the chancellor held that Plaintiff had sustained a ninety percent permanent partial disability to her hand. The chancellor held that Plaintiff was not entitled to recover for the body as a whole, because he apparently believed that Plaintiff's award was limited to the schedule in Tenn.Code Ann. § 50–6–207. At the conclusion of the trial, the chancellor stated to Plaintiff's attorney, "I know that we have

many cases where a functional overlay is involved, when the injury pertains to a non-scheduled member, like the back. Do you have any cases where a functional overlay or a psychological problem is compensable, where a scheduled member is involved?" No cases were given to the chancellor. In *Crump v. B & P Construction Co.*, 703 S.W.2d 140 (Tenn.1986), an employee tripped at work and injured his left wrist. The treatment of this injury included four operations, and the employee suffered extensive pain. During this treatment, he developed psychological problems as a result of his wrist injury. The trial court awarded the employee benefits for the permanent partial disability to his left upper extremity and for the permanent partial disability to the body as a whole. This Court held that "the trial judge should have taken the permanent disability attributed to the arm and applied it to the body as a whole, in conjunction with the disability caused by plaintiff's psychiatric condition." *Id.* at 143. We stated, "There should only be one overall rating of disability and that should be to the body as a whole." *Id.* at 144. *See also* Tenn.Code Ann. § 50–6–207(3)(C). Thus, both disabilities should be considered in fixing the disability rating for the body as a whole.

Defendant argues that the trial court's result should be affirmed because the psychological injury was not shown to be a permanent injury. In its brief Defendant states, "Had permanency of that injury [psychological injury] been so established, Appellee admits an award to the body as a whole would have been in order." The only evidence on the permanency is Dr. Brewer's deposition.

Concerning the status of her psychological problems, Dr. Brewer testified:

Q. Let me ask you, doctor, if Mrs. Kerr has sustained or retains any impairment, now not considering the speech problem, from a psychiatric perspective as a result of the trauma that she suffered in January of 1987? Do you have an opinion as to whether or not she does retain any impairment?

A. Yes, she does. I think so.

.  .  .  .  .

Q. As a result of this traumatic event, doctor, within a reasonable degree of certainty will Mrs. Kerr require care and treatment in the future?

A. Uh-huh.

Dr. Brewer's testimony on cross-examination was more specific.

Q. ... What I am interested in, sir, is the extent that the traumatic injury to her hand would have played as a factor in the condition that you find her in now. You testified that irrespective of the speech impediment—or impairment I guess is a better word under the facts as they've come out so far—irrespective of the speech impairment, the etiology of which is very difficult for you to ascertain, this lady will have some permanent impairment to the body or the person as a whole as a result of a psychological component or aftermath of the traumatic injury to her hand. That's what I understood you to testify in response to Mr. Logan's question. She has got some permanent medical impairment of a psychological nature as a result of the physical injury to her hand. Was my understanding correct that far?

A. He also threw in there several of the phrases "within a reasonable degree of medical certainty."

Q. Yes.

A. Yeah, within a reasonable degree.

Q. Within a reasonable degree of medical certainty. Does that mean you have some doubt?

A. What I do is not clear. Nothing I do is clear.

Q. But within a degree of reasonable medical certainty—I'm not trying to quarrel with that—within a degree of reasonable medical certainty it's your opinion that the symptoms, the constellation of symptoms she had and findings after the injury when you started to see her, lends credence to your opinion she's

going to have some permanent medical impairment to the person as a whole of a psychological nature as a result of her injury.

A. (Witness nods head affirmatively).

Q. Your answer is yes to that?

A. Yes.

Dr. Brewer's testimony shows that the psychological injuries are permanent. The doctor testified that it is reasonably certain that the problems are permanent, and that is sufficient. *Maryland Casualty Co. v. Young*, 211 Tenn. 1, 362 S.W.2d 241, 243 (Tenn.1962). The *Young* Court held, "It is not necessary that the evidence show conclusively or without a shadow of doubt that the injuries are permanent." 362 S.W.2d at 243. Defendant relies upon *International Yarn Corp. v. Casson*, 541 S.W.2d 150 (Tenn.1976), in which this Court reversed a trial court's finding of permanency. The doctor in that case testified that the employee's problems "may be with her for the rest of her life, or they may not be depending on what the future holds." Also, he "couldn't answer" the question of whether her problems would disappear. *Casson* is distinguishable from this case because Dr. Brewer's testimony is not based on conjecture or possibilities; Dr. Brewer stated several times that Plaintiff's psychological problems were permanent to a reasonable medical certainty.

The trial court's judgment is reversed, and the action is remanded for the chancellor to evaluate the disability to the body as a whole. He should determine to what extent the permanent partial disability to the hand acting in conjunction with the psychological condition affected the body as a whole. *Crump*, 703 S.W.2d at 144.

DROWOTA, C.J., and COOPER, O'BRIEN and DAUGHTREY, JJ., concur.